# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Z BAYOU, L.L.C., et al.<br>    **Plaintiffs** | CIVIL ACTION |
| **VERSUS** | NO. 15-4384 |
| WAFB, L.L.C., et al.<br>    **Defendants** | SECTION: "E" (4) |

## ORDER AND REASONS

Before the Court are two Special Motions to Strike pursuant to article 971 of the Lousiana Code of Civil Procedure filed by Defendants WAFB, LLC, Chris Slaughter and Samantha Morgan (collectively, "WAFB") and Defendant Benjamin Mintz D/B/A/ Minced Media, Inc. ("NOLA Defender").[1] Plaintiffs oppose both motions to strike.[2] For the reasons that follow, the Defendants' special motions to strike are **DENIED**.

## LAW AND ANALYSIS

In *Henry v. Lake Charles Am. Press. L.L.C.*, the Fifth Circuit explained the background and purpose of article 971:

> A number of state legislatures have expressed concerns over the use (or abuse) of lawsuits that have the purpose or effect of chilling the exercise of First Amendment rights. These suits are commonly referred to as "strategic lawsuits against public participation," or "SLAPPS." In response to the growth of SLAPPS, some states have provided a procedural method – often called a "special motion to strike" but known as an "anti-SLAPP motion or "SLAPPback" – to weed out and dismiss meritless claims early in litigation. . . Article 971 of the Louisiana Code of Civil Procedure provides one such method.[3]

Article 971 establishes a burden-shifting analysis for weeding out frivolous claims.

> To succeed on an Article 971 motion, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit. That is, the defendant must establish that a cause of action against him arises

---

[1] R. Doc. 33; R. Doc. 47.
[2] R. Doc. 51; R. Doc. 57.
[3] *Henry v. Lake Charles Am. Press. L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009).

> from an act by him in furtherance of the exercise of his right of petition or free speech under the United States of Louisiana Constitution in connection with a public issue. If the defendant makes this showing, the burden then shifts to the plaintiff to demonstrate a probability of success on his claim.
>
> If the plaintiff fails to demonstrate a probability of success, the trial court dismisses the claim. Otherwise, the trial court denies the motion and the suit proceeds as it normally would.[4]

Article 971(B) provides, "a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs."[5]

Defendants have failed to satisfy their burden in making a prima facie showing that article 971 covers the activity underlying the suit. Under article 971, a defendant must make an initial prima facie showing the matter arises from an act in furtherance of the defendant's right of free speech in connection with a public issue, as defined by the statute.[6] Defendants allege their speech falls under part (c) of the statutory definition which protects: "Any written or oral statement made in a place open to the public or a public forum in connection with an issue of public interest."[7] As the Defendants correctly identify, "Whether Plaintiff's claims are subject to a special motion to strike depends on whether [Defendants'] speech was about an issue of public interest."[8]

Defendants argue "Louisiana courts broadly construe 'an issue of public interest' to include 'any matter of political, social, or other concern to the community,'"[9] and that "[t]he production of motion pictures and television programming is, by itself, a matter of public interest."[10] In addition, Defendants state that WAFB's broadcast and NOLA

---

[4] *Id.* at 170 (internal citations omitted).
[5] La. Code. Civ. P. art. 971(B).
[6] *Id.* at (A)(1).
[7] *Id.* at (F)(1)(c).
[8] R. Doc. 33-9, at 7; R. Doc. 47-1, at 5.
[9] *Id.* (citing *Kirksey v. New Orleans Jazz & Heritage Found., Inc.*, 2012-1351 (La. App. 4th Cir.), 116 So. 3d 664, 669).
[10] *Id.* (citing *Kronemyer v. Internet Movie Database, Inc.*, 150 Cal.App.4th 941, 949 (Cal. App. 2007); *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal.App.4th 133, 142 (Cal. App. 2011)).

Defender's publication regarding, "a movie production company's failure to pay crew members trying to make a livelihood in the motion picture industry in Louisiana," is a matter of public interest.[11] WAFB also argues that in particular, the film industry is a public interest in Louisiana given that it is an "industry whose tax credit program has been the subject of considerable interest in the media, the legislature, and the courts," and, "in this difficult economy, the news that numerous workers on a particular work site say they were not paid tens of thousands of dollars is itself of public interest."[12]

In response, Plaintiffs allege that the subject of the Defendants' broadcast and publication fall outside the ambit of article 971 because they relate to a private dispute between Plaintiffs and the hired film crew.[13]

The Court agrees with the Plaintiffs' analysis. Although article 971 "should be construed broadly,"[14] the broadcast by WAFB and the publication by NOLA Defender do not concern an issue in the public interest. Louisiana courts have interpreted the "public issue" and "public interest" requirement as being the same as "public concern" in defamation cases."[15] In *Kennedy*, the Louisiana Supreme Court explained that matters are of public concern if they relate "to any matter of political, social, or other concern to the community. Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record."[16] In addition, the United States Supreme Court has explained that speech

---

[11] R. Doc. 33-9, at 7; R. Doc. 47-1, at 5-6.
[12] R. Doc. 33-9, 7-8.
[13] R. Doc. 51, at 4-5; R. Doc. 57, at 4.
[14] *See, e.g.*, *Kirksey*, 116 So. 3d at 669.
[15] *See Lyons v. Knight*, 2010-1470 (La. App. 3 Cir. 5/11/11), 65 So. 3d 257, 265 (citing *Kennedy v. Sherriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 677).
[16] *Kennedy*, 935 So. 2d 677 n.6.

may be considered a public concern when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[17]

As explained in *Herrera v. Medical Center Hosp.*, the Fifth Circuit has identified categories of speech that are and are not issues of public concern.[18] The Fifth Circuit has stated the following are categories of speech that touch upon the public concern: associating with political organizations and campaigning for a political candidate, speech made against the backdrop of ongoing commentary and debate in the press, and speech related to racial discrimination.[19] On the other hand, the Fifth Circuit has determined that the following categories are not of public concern: speech concerning a purely personal labor dispute, such as a disagreement between an employee and an employer about the conditions of employment, and challenges made by an individual to one's work conditions and the quality of the work environment.[20]

The underlying subject of WAFB's broadcast and NOLA Defender's publication was an employment dispute between private parties. Although the Defendants argue the film industry is an important public issue in Louisiana, the Court must consider the context in which the speech was made. For example, in *Armington v. Fink*, the court looked to the article's introduction to determine the purpose of the publishing.[21] The court, in finding that the article presented an issue of public interest, stated:

> According to its introduction, the article's purpose in describing and analyzing the events at Memorial Hospital in the days following Hurricane Katrina is to consider questions raised by disasters like how limited resources should be divided amongst patients and what is the line between comfort care and mercy killing. The article asserts the importance of these

---

[17] *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).
[18] *Herrera v. Medical Center Hosp.*, 241 F.Supp.2d 601, 609 (2002).
[19] *See id.*
[20] *See id.*
[21] *Armington v. Fink*, 2010 WL 743521, at *5 (E.D. La. Feb. 24, 2010).

> issues in light of proposed legislation to alter the standard of medical care in emergencies.[22]

Although the conclusion of the NOLA Defender article includes the statement that "[s]tories of productions failing to make payroll circulate in the industry," the following line of the article states, "in actuality, the instances remain surprisingly rare even on productions with relatively small budgets."[23] In addition, although WAFB argues the Louisiana film industry is an important issue in the public interest because of the state's tax credit program, WAFB's broadcast never mentions the issue of tax credits or controversies regarding the Louisiana film industry as a whole.

Courts have acknowledged that disputes between private parties can be issues in the public interest.[24] In *BCCL Enterprises, Inc. v. Rizzo*, the underlying issue involved "a private individual reporting an alleged theft of jewelry to the police."[25] In determining that the issue was in the public interest, the court reasoned, "If BCCL's employees were stealing items from its customer's homes, it would implicate and concern anyone who utilized BCCL's services. Accordingly, we conclude that this matter was one of public concern."[26] In the case before the Court, the allegedly harmed parties ostensibly had knowledge of the pay dispute prior to the broadcast and publication and were not being informed of the issue by the broadcast or publication. Unlike the issues in *Armington* and *BCCL*, the content and context of both the issue and the speech in question before this Court convince the Court that the broadcast by WAFB and the publication by NOLA Defender were not issues of public interst.

---

[22] *Id.*
[23] R. Doc. 40-1, at 4.
[24] *See, e.g., BCCL Enterprises, Inc. v. Rizzo*, 2013-1624 (La. App. 1 Cir. 8/20/14) 2014 WL 4102467.
[25] *Id.* at 3.
[26] *Id.*

Defendants argue, "Courts have recognized that the production of motion pictures and television programing is, by itself, a matter of public interest."[27] Defendants cite two California cases, *Kroneymyer v. Internet Movie Database, Inc.*[28] and *Tamkin v. CBS Broadcasting, Inc.*,[29] in support of their argument.[30] In response, Plaintiffs maintain "The rule set forth in these cases, contrary to the argument by [the Defendants], is not some broad rule of law applicable under all circumstances."[31]

The Court agrees with the Plaintiffs' analysis of these cases interpreting the California anti-SLAPP law. It is true that the Fifth Circuit has found that in the context of determining federal jurisdiction, appellate review, and the burden shifting procedure, the California anti-SLAPP law, California Code of Civil Procedure § 425.16, is similar to article 971.[32] There is a distinction, however, in the interpretation of "public interest" under the respective statutes. California courts have determined that although "Section 425.16 does not define 'public interest,' . . . its preamble states that its provisions shall be construed broadly to safeguard the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."[33] When interpreting the California statute, some courts have held "an issue of public interest is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the -SLAPP statute – it is enough that it is one in which the public takes an interest."[34] Louisiana courts interpreting article 971, however, have determined that in the express

---

[27] R. Doc. 33-9, at 7; R. Doc. 47-1, at 5.
[28] *Kroneymyer,* 150 Cal. App. 4th 941.
[29] *Tamkin*, 193 Cal. App. 4th 133.
[30] R. Doc. 33-9, at 7; R. Doc. 47-1, at 5.
[31] R. Doc. 51, at 7.
[32] *See, Henry*, 566 F.3d at 168-69.
[33] *Id.* (internal citations omitted).
[34] *Tamkin*, 193 Cal. App. 4th at 143 (internal citations omitted).

statement of intent for the statute, the legislature the reason behind article 971 is "that it is in the public interest to encourage continued participation *in matters of public significance.*"[35] In *Yount*, the court found this statement of intent demonstrated that the legislature only wanted the "extraordinary procedural remedy" provided by article 971 to apply to significant public issues.[36] The court reasoned that a broader interpretation would allow any party to "defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver's license renewal and be immunized from legal repercussions of damage to others."[37] As a result, the *Yount* court found statements made in connection with a private domestic proceeding were "not a matter of public significance for the purpose of applying the Louisiana anti-SLAPP protections."[38]

In cases in which courts have determined an issue is of public interest under article 971, the courts have further substantiated their findings beyond merely stating the public is interested in the issue. For example, in *Kirksey*, the court found issues concerning the annual Jazz Festival are of public concern because the festival "is one of the premier entertainment events each year in the City of New Orleans, contributing millions of dollars each year to the City's economy."[39] Similarly, in *Baxter v. Scott*, the court found blog posts made by a former university professor about the operations of a public university "clearly pertained matters of public interest," because "[u]ndoubtably, the public has a great interest in how [a public university] that both receives public funding and contributes to the economy of the area in which it is located, is governed and whether

---

[35] *Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15), 171 So. 3d 381, 388 (emphasis in original)
[36] *Id.* at 387-88.
[37] *Id.* at 387.
[38] *Id.* at 390.
[39] *Kirksey*, 116 So.3d at 669.

it is having financial difficulties that are possibly being misrepresented to the public."[40] As a result, article 971 requires a higher threshold showing of public interest than its California counterpart.

      The California cases cited by Defendants are distinguishable from to the case currently before the Court. In *Kroneymyer*, the court determined that the listing of the credits, on a website visited by 35 million people each month, for a very popular film, "My Big Fat Greek Wedding," was "a matter of considerable public interest."[41] It is clear that the court's finding was based on a context specific inquiry and was not, in turn, a broad holding that all stories about the film industry are of significant public interest. The court in Kroneymyer explained that the plaintiff's complaint actually concerned three projects, two smaller films, "Wishcraft" and "Stand and Be Counted," in addition to "My Big Fat Greek Wedding." The court, however, did not reach a decision as to whether published credit lists regarding the first two films involved issues in the public interest after finding that the plaintiff "did not make submissions to [the defendant] concerning either."[42] Whereas, with respect to "My Big Fat Greek Wedding," the court explained that the film was described as "a successful independent motion picture," and stated, "On this record, we conclude that . . . "My Big Fat Greek Wedding" was a topic of widespread public interest."[43] In *Tamkin*, the court, interpreted the California statute to apply to "any issue in which the public is interested."[44] The court, in dealing with alleged defamatory statements released by the popular television show, *CSI*, determined "the public was demonstrably interested in the creation and broadcasting of [the] episode [in question],

---

[40] *Baxter v. Scott*, 37,092 (La. App. 2 Cir. 5/16/03), 847 So. 2d 225.
[41] *Kroneymyer,* 150 Cal. App. 4th at 945.
[42] *Id.*
[43] *Id.* at 949.
[44] *Tamkin*, 193 Cal. App. 4th at 143.

as shown by the posting of the casting synopses on various Web sites and the ratings for the episode."[45]

The Plaintiffs argue the underlying issue of the case before this Court is a private employment dispute between private parties and not a matter of significant public interest.[46] Even in the context of a public employee, courts have found "the jurisprudence is well-settled that speech regarding the topic of employment disputes – employment grievances, personnel disputes, and working conditions – generally does not involve a matter of public concern."[47] In *Lozovyy v. Kurtz*, the claim involved speech by members of two different public universities and the alleged accusation of theft or destruction of data from a federally funded program involving a collaboration of scientists across the nation and the world.[48] The *Lozovyy* court found that this scenario fit within the "public issue" requirement of article 971 because "the legislative history of Article 971 requires that this Court give the statute a broad construction, thereby requiring its application in the event of a close call like this one."[49] Unlike *Lozovyy*, the case before this Court is not a "close call" and therefore does not require a broad construction of article 971.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Defendants' special motions to strike are **DENIED**.[50] The Court finds that the Defendants have not met their burden of proving that the suit arises from the exercise of their right of free speech in connection

---

[45] *Id.*
[46] R. Doc. 51, at 4-5; R. Doc. 57, at 4.
[47] *McGowan v. Hous. Auth. Of New Orleans*, 2012-1418 (La. App. 4 Cir. 3/27/13, 113 So. 3d 1143, 1156) (citing *Connick*, 461 U.S. at 147-48).
[48] *Lozovyy v. Kurtz*, 2015 WL 331804, at *8 (M.D. La. Jan. 26, 2015) *rev'd on other grounds*, 813 F.3d 576 (5th Cir. 2015).
[49] *Id.*
[50] R. Doc. 33, R. Doc. 47.

with a matter of public interest as required by article 971 of the Louisiana Code of Civil Procedure.

New Orleans, Louisiana, this 13th day of October, 2016.

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**